307 So.2d 798 (1975)
Shirley Gadison WADE
v.
McINNIS-PETERSON CHEVROLET, INC., et al.
No. 10087.
Court of Appeal of Louisiana, First Circuit.
February 10, 1975.
*800 Lawrence Roe Dodd, Baton Rouge, for appellant.
Wendell C. Lindsay, Jr., Baton Rouge, for plaintiff-appellee.
Henry D. Salassi, Jr., Baton Rouge, for defendant-appellee General Motors Corp.
Before LOTTINGER, COVINGTON and BAILES, JJ.
COVINGTON, Judge.
This is a redhibitory action in which plaintiff, Shirley Gadison Wade, sued McInnis-Peterson Chevrolet, Inc., the seller, and General Motors Corporation, the manufacturer, to rescind the sale of a 1971 Chevrolet automobile. The seller denied liability and filed a third party demand against the manufacturer seeking reimbursement for any amount it might be cast on the main demand. The manufacturer denied any liability on the main and third party demands.
After trial by jury, verdict was rendered in favor of plaintiff and against the seller in the amount of $4,125.00, and in favor of the manufacturer on both demands.Accordingly, judgment was entered on the verdict on June 7, 1974. After denial of a motion for a new trial, the seller appealed the judgment. Plaintiff has answered the appeal, seeking an increase in the award of attorney's fees for services rendered on appeal.
General Motors Corporation has moved to dismiss the devolutive appeal of plaintiff, Shirley Gadison Wade, on the ground that the appeal was not timely taken under the provisions of LSA-C.C.P. Art. 2087. In the instant case the judgment was signed and notice of judgment was mailed to the parties on June 7, 1974. On June 12, 1974, the defendant, McInnis-Peterson Chevrolet, Inc., timely moved for a new trial. In due course the motion for new trial was denied, and McInnis-Peterson appealed the judgment. Plaintiff did not move for a new trial, but filed a motion and order for a devolutive appeal on September 13, 1974, posting bond on September 18, 1974.
Since plaintiff did not move for a new trial, and the last day on which she could ask for a new trial was June 12, 1974, the ninety-day period for perfecting a devolutive appeal began June 13, 1974, and expired September 10, 1974, unless the motion filed on behalf of defendant, McInnis-Peterson Chevrolet, Inc., delayed the running of the time period within which the plaintiff was required to take an appeal. The issue then is whether McInnis-Peterson's application for a new trial extended the delays within which plaintiff was required to file her appeal. We hold that the application for a new trial by defendant, McInnis-Peterson Chevrolet, Inc., had no legal significance as to the plaintiff. This holding is in accord with the *801 jurisprudence expressed in the case of Payton v. Aetna Life and Casualty Company, La.App., 299 So.2d 489 (4 Cir. 1974), which held:
"In effect, however, the Supreme Court. . ." (in Thurman v. Star Electric Supply, Inc., La., 283 So.2d 212). . . "stated a general rule (that an application for new trial by one party suspends only the commencement of that party's delay for filing an appeal) and then proceeded to hold that the general rule is simply not workable under all circumstances. Since in the present case we find no similarity to the unusual circumstances in Thurman, we are compelled to follow the general rule and accordingly hold the appeal was untimely."
Accordingly, we dismiss plaintiff's devolutive appeal.
The record reflects that on June 29, 1971, plaintiff bought a 1971 Chevrolet automobile, which had been manufactured by General Motors Corporation, from McInnis-Peterson Chevrolet, Inc. of Baton Rouge, Louisiana. At the time of the sale the automobile showed some 7,100 miles on the odometer, and was represented by the seller as a demonstrator under a new-car warranty. The windshield had been replaced by the seller shortly before the sale. The cash price paid by plaintiff for the automobile was $4,759.90, and she was given a credit of $1,000.00 as a trade-in on her older automobile. The finance charge for the balance of $3,659.90 was the sum of $925.43, with the total charges amounting to the sum of $5,979.64.
Almost immediately after the sale plaintiff discovered water leakage in the area of the windshield during a rain. On July 1, 1971, plaintiff returned the automobile to the seller for correction of the windshield leakage. The evidence shows that plaintiff brought the automobile back to the seller on numerous occasions for correction of the same defective condition, but to no avail. Finally, tender of the automobile was made, which the seller refused. The instant action in redhibition followed and plaintiff demanded a jury trial.
Neither special verdicts nor a general verdict accompanied by answers to interrogatories were used on the trial of the instant case, so we have no insight into the basis of the jury verdict. We therefore will examine each disputed material issue to determine whether or not the jury committed manifest error. See LSA-C.C.P. Arts. 1811, 1812; Pagitt Well Service, Inc. v. Sam Broussard, Inc., La.App., 293 So.2d 631 (3 Cir. 1974), writ refused La., 295 So.2d 817 (1974).
In a sale, the seller is bound by an implied warranty that the thing sold is free of hidden defects and is reasonably fit for its intended use. LSA-C.C. Arts. 2475, 2476, 2520; Rey v. Cuccia, La., 298 So.2d 840 (1974); Media Pro. Consult., Inc., v. Mercedes-Benz of N.A., Inc., 262 La. 80, 262 So.2d 377 (1972).
The codal basis for a redhibitory action is Civil Code Article 2520, which provides:
"Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice."
A redhibitory defect entitling the buyer to rescind the sale is some non-apparent defect existing before the sale in the thing sold which renders it useless or its use so imperfect, that the buyer would not have bought it if he had known of the defect. See LSA-C.C. Arts. 2520, 2521, 2530. For a general discussion of the redhibitory action, see Comment, Warranty of Quality in Louisiana: Nature and Proof of the Implied-in-law Warranty, 23 Tul.L.Rev. 96 (1948), and Comment, Warranty of Quality in Louisiana: Extent of Recovery under the Implied-in-law Warranty, 23 Tul. *802 L.Rev. 130 (1948); for a discussion of the rights of the seller, see Note, The Rights of the Vendor in Redhibition, 30 La.L.Rev. 508 (1970).
The general test for the application of the redhibition codal articles to the sale of defective things has recently been enunciated in several recent cases, including Rey v. Cuccia, supra; Breaux v. Winnebago Industries, Inc., La.App., 282 So.2d 763 (1 Cir. 1973). In addition, the test for the applicability of the redhibition articles to the sale of defective automobiles in particular has recently been set out in the following cases:
Menville v. Stephens Chevrolet, Inc., La.App., 300 So.2d 858 (4 Cir. 1974); Dunlap v. Chrysler Motors Corp., La.App., 299 So.2d 495 (4 Cir. 1974); Tauzin v. Sam Broussard Plymouth, Inc., La.App., 283 So.2d 266 (3 Cir. 1973); Juneau v. Bob McKinnon Chevrolet Company, La. App., 260 So.2d 919 (4 Cir. 1972).
Tested by the standards set out in the cases cited above, we agree with the jury that the buyer in the instant case did not meet the burden of proving a redhibitory defect entitling the buyer to a rescission of the sale. We have also reviewed the evidence in the record and find that it does not support a rescission of the sale. However, we find that the water leak from the windshield did adversely affect the usefulness of the automobile to the buyer. The main problem in the instant case was the inability of the seller to correct the water leakage from the windshield. The buyer took the automobile numerous times to the seller's repair shop without beneficial results.
The overall circumstances as brought out on the trial, especially the nature of the defect and the long period of extensive usage of the automobile by the buyer, support our conclusion that the defect in the instant case was one which diminished the utility of the thing, constituting merely a partial failure of consideration, rather than such a redhibitory defect which would justify a rescission of the sale.
In every redhibitory action if the evidence establishes only a partial failure of consideration, a reduction in the purchase price may be granted to the buyer. See Ingersoll v. Star Chrysler, Inc., La. App., 234 So.2d 85 (4 Cir. 1970), writ refused 256 La. 365, 236 So.2d 499 (1970); Wolfe v. Henderson Ford, Inc., La.App., 277 So.2d 215 (3 Cir. 1973). See also LSA-C.C. Arts. 2541, 2543.
In the Star Chrysler case, the Court said:
"In every redhibitory action if the evidence establishes only a partial failure of consideration the court has the power and duty to decree a quanti minoris, or a reduction of the purchase price."
The Court, in Henderson Ford, ruled:
"A decree of quanti minoris is responsive to an action for redhibition, being expressly authorized by LSA-C.C. Art. 2543. It follows that in every redhibitory action, the judge has the power and the duty, if he believes that the evidence establishes only a partial failure of consideration, to decree a quanti minoris."
In such a case, the amount of the reduction in price should be the difference between the actual purchase price and the price a reasonable buyer and seller would have agreed upon if they had both known of the defect. See Menville v. Stephens Chevrolet, Inc., supra; Tauzin v. Sam Broussard Plymouth, Inc., supra; Gauche v. Ford Motor Company, La.App., 226 So. 2d 198 (4 Cir. 1969).
In Stephens Chevrolet, in determining the amount of reduction to which the buyer was entitled, the Court said:
"The diminution which the trial judge may decree under C.C. art. 2543 is theoretically the difference between the sale price and the price the reasonable buyer and seller would have agreed upon if they had known of the defects.

*803 "To prove the theoretical price to which the actual sale price should be reduced, a plaintiff attempts to establish the fair value as of the time of the sale, if the defects had been known. Evidence as to this theoretical value may consist of expert opinion testimony, of costs expended to place the thing in sound condition, or of other facts bearing on the reduced price a forewarned buyer would have paid and a seller with knowledge of the defects would have accepted. But in the final analysis the trier of fact cannot mathematically calculate what price the parties would have agreed to, if they had known of the defects; the trier must consider the overall evidence and, using limited discretion, must set a reduced sale price which fictionally represents the fair value at the time of sale."
In the instant case the buyer and the seller, by agreeing upon the purchase price, set the value of the 1971 demonstrator Chevrolet automobile free from defects. Reduction of the purchase price to the fair value of the automobile at the time of the sale, if both the buyer and the seller had known of the defect which appeared shortly thereafter, involves multiple considerations. We conclude that the trial jury, in making its award of a price reduction, properly considered the numerous problems involved herein, the frequent inconvenience associated with the attempted repairs of the defective windshield, the actual damage to the automobile caused by the water leakage, the actual cost of repairing the defective windshield and other items that would go toward diminishing the value of the thing. In the instant case the jury's verdict was in favor of plaintiff in the amount of $4,125.00, of which sum attorney's fees were stipulated to be $1,625.00. The jury thus allowed plaintiff the sum of $2,500.00 as a price reduction. We do not find that the jury committed manifest error in determining that the purchase price should be reduced by this amount. We, of course, do not know the facts on which the jury based its conclusions and verdict. In such a case, we are directed to make our own findings of fact, which we have done. See Rowe v. Travelers Insurance Company, 253 La. 659, 219 So.2d 486 (1969); Hurst v. Hardware Mutual Casualty Company, La.App., 234 So.2d 802 (1 Cir. 1970). Our independent review of the record herein shows that the jury's conclusions and verdict were consistent with and supported by the evidence.
In addition, plaintiff has asked for attorney's fees. The jury included the stipulated sum of $1,625.00 as attorney's fees in its award. The applicable law is found in Civil Code Article 2545, as amended by Act No. 84 of 1968, which provides:
"The seller, who knows the vice of the thing he sells and omits to declare it, besides the restitution of price and repayment of the expenses, including reasonable attorneys' fees, is answerable to the buyer in damages."
To recover attorney's fees the buyer must prove knowledge of the defect by the seller. He need not prove wilful misrepresentation. It is sufficient for the buyer to prove actual or constructive knowledge by the seller. Thus, if the seller knew or should have known of the defect and failed to declare it to the buyer, the seller is liable additionally for reasonable attorney's fees. See Juneau v. Bob McKinnon Chevrolet Company, supra; Rey v. Cuccia, supra.
The facts of the instant case show that the seller installed the windshield in the automobile as a replacement for the original windshield, which had gotten broken. There is no testimony that the seller made any effort to water-test the windshield prior to the sale. Plaintiff drove the automobile for only a few days when the windshield leaked during the first rain. We can only conclude that the windshield was defective or improperly installed. This is sufficient to invoke the rule in the Juneau case, charging the seller with knowledge of defects which are "discoverable *804 in the exercise of ordinary case." Since only a short period of use by the buyer was time enough for the manifestation of the defect, constructive knowledge of the defective windshield is charged to the seller in the instant case. Hence, we find no manifest error in the jury's allowance of the stipulated attorney's fees.
Plaintiff has asked for an increase of the attorney's fees on appeal. We have read the entire record, including the transcript of the testimony, plaintiff's pleadings, and the brief filed in plaintiff's behalf on appeal. We feel that the stipulated attorney's fees compensates plaintiff's attorney adequately for the work he has done in this case.
We also find no manifest error in the jury's verdict dismissing third party demands against the manufacturer, General Motors Corporation. It is established by the evidence that the 1971 Chevrolet automobile did not have water leakage prior to the replacement of the windshield by the seller. The manufacturer had nothing to do with the replacement of the windshield. The automobile had been driven more than 7,000 miles as a demonstrator without any sign of water leakage prior to the replacement of the windshield. Although there was some testimony that some of the water leakage could have been caused by a leaky plenum chamber which was an integral part of the original manufactured product, the jury did not accept this version of the cause of the water leakage. The jury heard the witnesses and concluded that the water leakage was caused by a defective windshield. Consequently, the jury did not hold the manufacturer responsible. We have no reason to disagree with the jury's finding that the defect was a defective windshield rather than a defective plenum chamber. We have reviewed the evidence and it fails to show any latent defect in the manufacture of the automobile which would impose liability on the manufacturer. See Ingersoll v. Star Chrysler, Inc., supra; Gauche v. Ford Motor Company, supra; Rey v. Cuccia, supra; Breaux v. Winnebago Industries, Inc., supra.
For these reasons, the judgment in favor of plaintiff, Shirley Gadison Wade, and against defendant, McInnis-Peterson Chevrolet, Inc., is affirmed. Also, the judgment in favor of General Motors Corporation dismissing the third party demand of defendant is affirmed. Defendant to pay all costs.
Affirmed.